IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ASHTON DANIEL,
#R69925,

        Plaintiff,

v.

JEFF DENNISON,
NIKOLE JUSTICE,
KRISTIN HAMMERSLEY, and
KAREN SMOOT,

        Defendants.

Case No. 19-cv-0466-NJR

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

This matter is before the Court on Defendants' motion for summary judgment (Doc. 47). Defendants Dennison, Justice, Hammersley, and Smoot argue that Plaintiff Ashton Daniel failed to exhaust his administrative remedies prior to filing suit. Daniel filed a response in opposition to the motion (Doc. 53). On July 1, 2020, the Court held an evidentiary hearing. Following the hearing, as directed by the Court, Daniel filed a supplement to his response (Doc. 59), and Defendants filed a reply (Doc. 60). Daniel then filed two additional supplemental briefs. (Docs. 61, 62).

## BACKGROUND

Daniel, an inmate of the Illinois Department of Corrections ("IDOC") who is currently housed at Graham Correctional Center, commenced this action by filing a complaint pursuant to 42 U.S.C. § 1983 alleging he was denied medical and mental health treatment for his manic depression while at Shawnee Correctional Center ("Shawnee").

(Doc. 1). On October 4, 2019, the Court granted Daniel's motion for leave to file an amended complaint. In the amended complaint, Daniel added (1) allegations of ongoing constitutional violations by Defendants for continuing to provide inadequate mental health treatment, including denial of treatment of his insomnia caused by manic depression with medication; and (2) claims against a new defendant, Karen Smoot. Following preliminary review of the amended complaint pursuant to 28 U.S.C. § 1915A Daniel is proceeding with the following claim:

> **Count 1:** **Eighth Amendment claim of inadequate medical treatment against Justice, Hammersley, and Smoot for denying Daniel mental health services and medical treatment for fourteen months and continuing to provide inadequate treatment for his manic depression and insomnia.**

In the motion for summary judgment, Defendants argue that Daniel failed to exhaust his administrative remedies prior to commencement of this suit and refer to one grievance in support of their argument. (Doc. 48, p. 2). In Grievance 2019-04-148, dated April 17, 2019, Daniel complains that he has suffered from insomnia since arriving at Shawnee in 2017, he informed mental health professionals in February and March 2019 that he is unable to sleep, and he requests to be placed on the medication that he was previously prescribed for insomnia. (Doc. 48-1, p. 1). The counselor returned the grievance to Daniel on April 25, 2019, finding that Daniel was receiving the appropriate level of care. (*Id.;* Doc. 48-2, p. 1). Daniel submitted the grievance for further review to the grievance officer on May 7, 2020. The grievance officer determined the grievance was moot, the Chief Administrative Officer concurred in the determination, and the grievance was returned to Daniel on July 10, 2019. Daniel appealed to the Administrative Review

Board. The Administrative Review Board reviewed the grievance on July 25, 2019, and determined the grievance was moot. (Doc. 48-4, p. 1). Defendants argue that Daniel did not receive a determination from the Administrative Review Board until July 25, 2019, and thus, he commenced this suit prematurely on May 1, 2019. Because Daniel failed to complete every step in the grievance process prior to filing his complaint, he has not fully exhausted his remedies and should be barred from pursuing the present litigation. (Doc. 48, p. 7).

Daniel argues that he attempted to exhaust the prison's administrative remedies by first filing Grievance 2019-02-132 on February 20, 2018. (Doc. 53, p. 1-2). The emergency grievance was sent to the Chief Administrative Officer for review, but he did not receive an answer. He further states that Grievance 2019-05-148, dated April 17, 2019, was fully exhausted and argues that he also did not receive a response to that grievance. Finally, he filed emergency Grievance 2019-05-15 on April 30, 2019, and he claims this grievance was also fully exhausted. (*Id.*).

### LEGAL STANDARDS

Summary judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. § 1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other

correctional facility until such administrative remedies as are available are exhausted." *Id*. The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that "[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, 544 F.3d 739, 740-41(7th Cir. 2008). Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Court set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the

> prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id.* at 742.

As an IDOC inmate, Daniel was required to follow the regulations contained in the Illinois Department of Corrections' Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims. 20 ILL. ADMIN. CODE §504.800 *et seq*. The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. 20 ILL. ADMIN. CODE §504.810(a). The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 ILL. ADMIN. CODE §504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. 20 ILL. ADMIN. CODE §504.820(a). The grievance officer will review the grievance and provide a written response to the inmate. 20 ILL. ADMIN. CODE §504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the grievance, when reasonably feasible under the circumstances." 20 ILL. ADMIN. CODE §504.830(e). "The Chief Administrative Officer shall review the findings and recommendation and advise the

offender of his or her decision in writing. *Id.*

If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the Administrative Review Board ("ARB"). The grievance procedures specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the decision." 20 ILL. ADMIN. CODE §504.850(a). The inmate shall attach copies of the grievance officer's report and the Chief Administrative Officer's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 ILL. ADMIN. CODE §504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 ILL. ADMIN. CODE §504.850(e).

The grievance procedures do allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly to the Chief Administrative Officer who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. 20 ILL. ADMIN. CODE §504.840(a). If the Chief Administrative Officer determines the grievance should be handled on an emergency basis, then the Chief Administrative Officer "shall expedite

processing of the grievance and respond to the offender" indicating to him what action shall be taken. 20 ILL. ADMIN. CODE §504.840(b). If the Chief Administrative Officer determines the grievances "should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process." 20 ILL. ADMIN. CODE §504.840(c). When an inmate appeals a grievance deemed by the Chief Administrative Officer to be an emergency, "the Administrative Review Board shall expedite processing of the grievance." 20 ILL. ADMIN. CODE §504.850(f).

## ANALYSIS

There are three grievances at issue relevant to Daniel's claims: Grievance 2019-05-15, Grievance 2019-02-132, and Grievance 2019-04-148.

**Grievance 2019-05-15**

Daniel argues in his response to the motion for summary judgment that Grievance 2019-05-15 was fully exhausted. (Doc. 53, p. 1). The documents he submitted to the Court following the hearing show that Grievance 2019-05-15 is dated April 30, 2019 and marked as an emergency. (Doc. 59, p. 5). On May 2, 2019, the warden determined the grievance was not an emergency. Daniel then submitted the grievance directly to the ARB for review. On June 10, 2019, the ARB returned the grievance to Daniel because he did not include a copy of a response from a grievance officer and Chief Administrative Officer with his appeal. (Doc. 59, p. 4).

"To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo*, 286 F.3d at 1025. Because

Daniel appealed the grievance directly to the ARB, rather than resubmit the grievance as a nonemergency, the Court finds that Daniel did not properly exhaust Grievance 2019-05-15. *See Williams v. Wexford Health Sources, Inc.*, 957 F.3d 828, 832 (7th Cir. 2020) (noting that emergency grievances filed after 2017 must be resubmitted under the normal procedures once deemed a nonemergency). Although at the hearing Daniel expressed some confusion over the grievance process, he has not disputed Defendants' claim that he was provided a copy of the Offender Orientation Manual upon his arrival at Shawnee. (Doc. 48, p. 5). Additionally, the copy of Grievance 2019-05-15 he filed with the Court informed him that the grievance needed to be submitted in the normal manner. Even under Daniel's mistaken assumption that a grievance is exhausted once he receives a signature from the warden, he still filed this case too early, as he filed the complaint May 1, 2019, but did not receive the determination that the grievance was not an emergency until after May 2, 2019. Because he failed to pursue the grievance through the normal grievance process and "take all steps prescribed by the prison's grievance system[,]" prior to filing this suit, Daniel failed to exhaust Grievance 2019-05-15. *Ford,* 362 F. 3d at 397.

**Grievance 2019-02-132**

At the hearing, Daniel testified that he submitted his first emergency grievance regarding inadequate mental health treatment in 2018. He stated the emergency grievance, Grievance 2019-02-132, complained that he is was not receiving medication for his insomnia caused by his manic depression and that he was not receiving mental health treatment. He alleged at the hearing and in his response that he never received an answer to this grievance. (*See* Doc. 53, p. 1). When asked by the Court to provide a copy for the

record at the hearing, Daniel responded that he was unable to submit a copy because the grievance was never returned to him.

The cumulative counseling summary and counseling summary submitted by Daniel record that Grievance 2019-02-132 regarding mental health, dated February 20, 2018, was sent to the Chief Administrative Officer for review on February 22, 2019. (Doc. 53, p. 2; Doc. 59, p. 7). The next entry on the cumulative counseling summary, on February 26, 2019, provides that *Grievance 2019-02-133, regarding request for mental health programs, dated February 20, 2019,* was determined not to be an emergency and returned to Daniel. (Doc. 53, p. 2). Defendants treat Grievances 2019-02-132 and 2019-02-133 as corresponding grievances. (Doc. 60, p. 2). They point to the grievance log, which records that Grievance 2019-02-133 was received on February 21, 2019, sent to the Chief Administrative Officer on February 22, 2019, and entered into the cumulative counseling summary ("CHAMP receipt made") on February 22, 2019. (Doc. 48-2, p. 1). The only entry into the cumulative counseling summary on February 22, 2019, is for Grievance 2019-02-132. They argue that because Daniel did not properly resubmit Grievance 2019-02-132/2019-02-133, after it was deemed a nonemergency, he did not fully exhaust Grievance 2019-02-132/2019-02-133. (Doc. 60, p. 2).

The Court finds that Defendants have not met their burden of proving that the administrative remedy process was available to Daniel concerning the processing of Grievance 2019-02-132. Both the cumulative counseling summary (Doc. 53, p. 2) and the counseling summary (Doc. 59, p. 7) state that Grievance 2019-02-132, dated February 20, 2018, was sent to the Chief Administrative Officer for review on February 22, 2019. Daniel

testified that he did not receive a response back after submitting this grievance in 2018, and there is no further reference to the grievance in the record. Defendants' argument that the grievance log demonstrates that the grievance was fully processed is unconvincing. The grievance log records the processing of Grievance 2019-02-133, dated February 20, 2019, and although the grievance log cites to the entry in the cumulative counseling summary on February 22, 2019, there is no reference to Grievance 2019-02-133 on that date. Defendants have not provided any explanation for the discrepancies in grievance numbers and dates between the two documents. Defendants have also not addressed the allegation that Grievance 2019-02-132 was filed in 2018 as an emergency and not submitted to the Chief Administrative Officer for review until February 2019. As this Court has recognized, "inmates do not have to wait indefinitely for a response to an emergency grievance." *Godfrey v. Harrington,* No. 13-CV-280-NJR-DGW, 2015 WL 1228829, at *3 (S.D. Ill. Mar. 16, 2015) (citations omitted). Construing the evidence in the light most favorable to the nonmovant, and drawing "all justifiable inferences…in his favor[,]"*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), the Court finds that the administrative remedies were unavailable to Daniel regarding Grievance 2019-02-132, and he has satisfied the exhaustion requirement under the PLRA. *See Reid v. Balota,* 962 F.3d 325, 329 (7th Cir. 2020) ("an administrative scheme can be 'unavailable' to a prisoner when a prison fails to respond to a prisoner's grievance"). Daniel's Eighth Amendment claim against Defendants for failing to provide adequate treatment of his mental health and insomnia survives summary judgment.

**Grievance 19-04-148**

In Grievance 19-04-148, Daniel grieves that in February and March of 2019 he was seen by a mental health professional but was not given medication for his insomnia. He also states that he has been suffering from insomnia since his arrival at Shawnee. (Doc. 48-1). Because the Court finds that Daniel satisfied the grievance requirements when he filed Grievance 2019-02-132, which Daniel testified also grieved inadequate treatment of his insomnia caused by manic depression, the Court does not need to address the arguments presented by the parties regarding Grievance 19-04-148.

## ADDITIONAL SUPPLEMENTS

Following the hearing, Daniel was given until July 8, 2020, to supplement his response to the motion for summary judgment with copies of grievances, specifically Grievance 2019-02-132 and Grievance 2019-05-15. Defendants were also given an opportunity to respond to Daniel's supplement. (Doc. 58). Following the filing of Defendants' reply brief on July 15, 2020, Daniel submitted two additional supplements in response to Defendants' reply. (Docs. 61, 62). The Local Rules of this Court provide that "[u]nder no circumstances will sur-reply briefs be accepted" and prior to filing a supplement, a party must first seek leave of the court. SDIL-LR 7.1(c). Because sur-reply briefs are prohibited and Daniel did not seek leave before filing his additional supplements, the additional supplements will be stricken from the docket.

## DISPOSITION

For the reasons stated above, the motion for summary judgment (Doc. 47) is **DENIED.**

The Clerk of Court is directed to **STRIKE** Doc. 61 and Doc. 62 from the record.

**IT IS SO ORDERED.**

DATED:   August 6, 2020

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**